**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS BEALE,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **C.A.No. 13-15ERIE** |
| | ) | **District Judge McVerry** |
| **MAXINE OVERTON, et al,** | ) | **Magistrate Judge Baxter** |
| | ) | |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.      RECOMMENDATION

It is respectfully recommended that the motion to dismiss by the Corrections Defendants (ECF No. 67) be granted in part and denied in part.

## II.     REPORT

### A.  Relevant Procedural History

Plaintiff, acting *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 by filing a motion to proceed *in forma pauperis* on January 14, 2013, accompanied by a motion for preliminary injunction.[1]  ECF Nos. 1-4.  Plaintiff's Complaint was docketed on July 15, 2013. ECF No. 16.  An Amended Complaint was filed on June 23, 2014.  ECF No. 64.

In his Amended Complaint, Plaintiff, a prisoner currently incarcerated at the State Correctional Institution at Chester (SCI-Chester), primarily contends that prison officials at his

---

[1] A hearing was held on the motion for injunctive relief on July 23, 2013, at which Plaintiff's motion for preliminary injunction was denied as moot.  See ECF Minute Entry 7/23/13; ECF No. 31.

previous place of confinement, SCI-Albion, violated his civil rights as secured by the First and Eighth Amendments to the United States Constitution by: (1) allowing him to be exposed to environmental tobacco smoke ("ETS") with deliberate indifference to his health; and (2) retaliating against him for filing grievances related to his exposure to ETS. He also claims that he received inadequate medical care and that supervisors at SCI-Albion failed to properly train or supervise their subordinates. Plaintiff has named a host of state and SCI-Albion prison officials and employees as Defendants in this action, including: John Wetzel, the Secretary of Corrections for the Pennsylvania Department of Corrections ("DOC"); Jeffrey Witherite, Staff Assistant of the Western Region of the Pennsylvania DOC; Michael W. Harlow, Superintendent; Richard M. Hall, Deputy Superintendent; Ronald Bryant, Deputy Superintendent; William J. Woods, Corrections Classification Program Manager; Robert Gilmore, Corrections Officer ("CO"); Randy Irwin, CO; Szelewski, CO; Lewis Johnson, CO; Hendricks, CO; Bryan Flinchbaugh, Unit Manager; Michelle Wagner, Unit Manager; Laura Giles, Inmate Employment Supervisor; J. Beddick, CO; H.W. Hodge, CO;W. Christopher, CO; J.S. Ceremuga, CO; R.S. Pangborn, CO; E.F. Lindey, CO; W.M. Maloney, CO; Mark Cimperman, CO; S.K. Hong, CO; G.L. Ferraro, CO; S.L. McDonald, CO; J.K. Knight, CO; F.L. Jones, CO; B. Sullivan, CO; T. Lindsey, CO; M. Rodriguez, CO; A. Pierce, CO; S. Williamson, CO; M.A. McLaurin, CO; Silloway, CO; Brian Murry, Maintenance Manager; Don Lindsey, Central Plant Supervisor; Dean Campbell, H-VAC Supervisor; Dan Henry, Mailroom Supervisor; Pauline Blood, Commissary Manager; Maxine Overton, Health Care Administrator; Brenda Weaver, Librarian; Douglas Petroff, Librarian; and Stephen Smith, Safety Manager (collectively, the "Corrections Defendants").[2] In addition, the

---

[2] Defendants Campbell, Giles, Hendricks, D. Lindsey, Murry, Petroff, Silloway, Szelewski, Weaver, Telega, Lewis, and Johnson have not yet been served. However, as will be further discussed herein, Plaintiff has failed to state a claim against any of these Defendants, with the exception of Giles. Consequently, the claims against Campbell, Giles, Hendricks, D. Lindsey, Murry, Petroff, Silloway, Szelewski, Weaver, Telega and Lewis should be dismissed

Amended Complaint names two non-DOC personnel as Defendants: Daniel Telega, Physician Assistant; and Julianna Lewis, Registered Nurse.

On July 7, 2014, the Corrections Defendants filed a motion to dismiss. ECF No. 67. Plaintiff filed a Response in Opposition on August 11, 2014. ECF No. 73. This matter is now ripe for review.

### B. Standards of Review

#### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g.,

---

pursuant to Section 1915A of the Prison Litigation Reform Act. See 28 U.S.C. § 1915A ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted."); see also Swinson v. Dept. of Corrections, 2009 WL 33330, *17 (W.D. Pa. Jan. 5, 2009) ("Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so.") (citing Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. Nov. 3, 1997)).

<u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same).

Because Plaintiff is, once again, a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). <u>See</u> also <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (specifically applying <u>Twombly</u> analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. <u>Twombly</u>, 550 U.S. at 555, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). <u>See</u> <u>also</u> <u>McTernan v. City of York, Pennsylvania</u>, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 556, <u>citing</u> 5 C. Wright & A. Miller, <u>Federal</u>

<u>Practice and Procedure</u> § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." <u>Smith v. Sullivan</u>, 2008 WL 482469, at *1 (D. Del.) <u>quoting</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 234, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the <u>Twombly/Iqbal</u> line of cases:

> To determine the sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, we must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011) <u>quoting</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

**C. Analysis**

In his Amended Complaint, Plaintiff contends that he suffers from several medical conditions that either stem from or are exacerbated by exposure to ETS, including asthma and allergies. Despite these medical conditions, Plaintiff contends that staff at SCI-Albion refused to enforce the prison's non-smoking policy and disregarded his frequent requests to be housed away from inmates who smoked. ECF No. 58 at ¶¶ 113-117, 284, 286, 288, 290  Plaintiff also

contends that he suffered retaliation after he filed grievances complaining of incidents where he was exposed to ETS or suffered negative health effects as a result of exposure to ETS. Id. at ¶ 287, 289, 291. Finally, Plaintiff broadly alleges that the Corrections Defendants "fail[ed] to supervise and properly train subordinates." Id. at ¶ 285.

In their motion to dismiss, the Corrections Defendants maintain that: (1) the doctrine of sovereign immunity insulates them for liability for claims against them in their official capacities; (2) Plaintiff has failed to plead the personal involvement of most of the Corrections Defendants with sufficient particularity; and (3) Plaintiff has failed to state a claim with respect to any of his allegations. Each of these arguments will be addressed in turn.

### 1. Official Capacity Claims

In his Amended Complaint, Plaintiff purports to state claims against each of the named Defendants "both individually and in their official capacities." ECF No. 58 ¶ 27. However, it is well-settled that "the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities." See, e.g., O'Donnell v. Pennsylvania Dept. of Corrections, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011) (citing Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996)). "Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." Johnson v. Wenerowicz, 440 F. App'x 60, 62 (3d Cir. 2011). Consequently, the Corrections Defendants – each of whom is an official, officer, or employee of the Commonwealth of Pennsylvania – are entitled to immunity from any monetary claims against them in their official capacities. See ECF No. 58 at ¶¶ 4-26.

Plaintiff's Amended Complaint also seeks injunctive and declaratory relief against the Corrections Defendants based on the same conduct underlying his claims for monetary relief. While it is true that Eleventh Amendment immunity does not apply to claims for injunctive relief against state officials to enjoin conduct alleged to be an ongoing violation of federal law or the Constitution, see Ex Parte Young, 209 U.S. 123, 129 (1908), such claims must be based on an ongoing violation, rather than past conduct. Seminole Tribe, 517 U.S. at 73. Consequently, "[a]n inmate's transfer from the facility complained of generally moots [his] equitable and declaratory claims." Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993). In light of Plaintiff's transfer from SCI-Albion to SCI-Chester, his requests for injunctive and declaratory relief have been rendered moot.

### 2. Lack of Personal Involvement

In a Section 1983 action, "a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." Kirk v. Roan, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting Evancho v. Fischer, 423 F.3d 347, 353 (3d Cir. 2006)). However, there is not a single factual allegation in the Amended Complaint concerning Defendants Bryant, Christopher, Irwin, Knight, Lindey, McDonald, McLaurin, Pangborn, Rodriguez, Woods, Campbell, Hendricks, D. Lindsey, Silloway, Szelewski or Weaver. Accordingly, each of these Defendants should be dismissed from this action.

With respect to Defendants Blood, Ceremuga, Giles, Cimperman, Hong, Henry, Petroff, Smith, and Lewis, Plaintiff's allegations consist of nothing more than extremely brief verbal exchanges, none of which suggest a denial of a constitutional right. See ECF No. 58 ¶¶ 43, 75, 91, 130, 134, 170, 226, 227, 230, 239, 241, 254-55. For many of these incidents, the named

Defendant is simply a person who passed information along to Plaintiff or had a conversation with him about an incident involving other Defendants. Although these allegations provide background for Plaintiff's claims against other Defendants, they do not form the basis for substantive allegations against Ceremuga, Giles, Cimperman, Hong, Henry, Petroff, Smith, and Lewis. Each of these Defendants should be dismissed.

Several other Defendants appear to have been included in this action solely by virtue of their positions within the DOC system or because they played a role in the review of Plaintiff's grievances. Specifically, the only allegations against Defendants Wetzel, Witherite, Hall, Gilmore, Johnson, and Flinchbaugh concern complaints or grievances that Plaintiff made to each of them that he felt were not handled in a satisfactory manner. See ECF No. 58 ¶¶ 53, 58, 74, 94, 108-09, 118-22, 123-24, 135-36, 156-57, 173, 196-98, 204, 225, 256-57, 274, 278. However, when a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). See also Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir.1988). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990). Moreover, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." Mearin v. Swartz, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). See also Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (allegation that a prison official denied a grievance was insufficient to establish personal involvement); Watkins v. Horn, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997) (concurrence in an administrative appeal process is not sufficient to

establish personal involvement). Consequently, Defendants Wetzel, Witherite, Hall, Gilmore, Johnson, and Flinchbaugh should each be dismissed because there are no facts to suggest that they took an "affirmative part" in any misconduct.

Finally, although Telega and Lewis are not represented by counsel for the Corrections Defendants and have not yet been served in this action, the Court observes that there do not appear to be any substantive allegations in the Amended Complaint directed towards either Telega or Lewis. Lewis is mentioned only once, in the context of asking Plaintiff to sign a "Cash Slip." ECF No. 58 at ¶ 43-44. Telega is referenced only in Plaintiff's descriptions of the medical care that Plaintiff received for his allergies and asthma. Id. at ¶¶ 49-50, 52, 132, 200-01, 207, 232, 248, 253, 268-69. Although Plaintiff makes a conclusory allegation that he received "inadequate medical care" while housed at SCI-Albion, he does not direct a single factual accusation of improper care towards Telega or any other medical professional. Id. Accordingly, Plaintiff has failed to state a claim against either of these non-Corrections Defendants and they should be dismissed from this legal action pursuant to this Court's authority under the PLRA. See footnote 2.

Having narrowed the pool of Defendants to those against whom Plaintiff makes factual allegations of personal involvement, the Court now turns to the substance of Plaintiff's claims against the remaining Defendants.

### 3. Eighth Amendment – Exposure to ETS

In order to succeed on an Eighth Amendment claim based on exposure to ETS, Plaintiff must establish that: (1) he has been exposed to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) that prison authorities were deliberately indifferent to his exposure to ETS. Brown v. U.S. Justice Dep't, 271 F. App'x 142, 144 (3d Cir. 2008)

9

(citing Helling v. McKinney, 509 U.S. 25, 35 (1993)); see also Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003) ("In order to succeed on such a claim, a prisoner must satisfy both the objective and subjective prongs of any Eighth Amendment claim: that the prisoner is being exposed to unreasonably high levels of ETS and that prison officials have been deliberately indifferent to the risk of harm."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

With respect to the first prong of his Eighth Amendment claim, Plaintiff has alleged sufficient facts to raise his potential right to relief above a speculative level. Plaintiff alleges that, despite a no-smoking policy at SCI-Albion, inmates smoked in their cells frequently enough that cigarette smoke could be observed in the air on a daily basis. ECF No. 58, ¶ 47, 116. Plaintiff contends that he was constantly exposed to this level of smoke and that it was "[visibly] and physically apparent in the air on the housing unit." Id. at ¶ 116. Plaintiff maintains that he suffers from tobacco allergies and asthma and that the tobacco smoke in the prison caused him to experience a myriad of serious symptoms including uncontrollable coughing, expectoration of blood, dizziness, chest and side pains, headaches, nausea, burning eyes, hives, and loss of consciousness. Id. at ¶¶ 49, 115, 142, 158, 205. These allegations are sufficient to suggest that Plaintiff was exposed to unreasonably high levels of ETS while housed as SCI-Albion. See Mearin, 951 F.Supp.2d at 781 ("Plaintiffs' assertions that the constant exposure to ETS . . . caused coughs, headaches, chest pains, shortness of breath, vomiting, fatigue, and dizziness appears sufficient at this juncture to suggest that Plaintiffs have been exposed to unreasonable

high levels of ETS."); <u>Atkinson</u>, 316 F.3d at 268 (finding unreasonably high ETS exposure where plaintiff was housed for seven months with "constant" smokers).

Turning to the second element of his Eighth Amendment claim, Plaintiff must allege sufficient facts to demonstrate "personal involvement" in the alleged violation by one or more of the remaining Defendants. Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." <u>Evancho</u>, 423 F.3d at 353 (quoting <u>Rode</u>, 845 F.2d at 1207). Put simply, Plaintiff must demonstrate that a defendant "had actual knowledge of the serious conditions of Plaintiff's need to [avoid cigarette smoke]," "knew that these conditions . . . had been going on for a significant period of time," and "refused to rectify the conditions." <u>Mearin</u>, 951 F.Supp.2d at 784.

Of the remaining Defendants, the Amended Complaint purports to state an Eighth Amendment ETS exposure claim against Superintendent Harlow, CO Beddick, CO Hodge, CO Maloney, CO Jones, Unit Manager Wagner, Maintenance Manager Murry, and Health Care Administrator Overton. Each will be addressed in turn.

### a. CO Beddick

On December 2, 2011, Plaintiff alleges that CO Beddick "sarcastically" shouted to him, "You know we can't walk around all the time trying to catch people smoking in their cells. I need you to tell me who's smoking. Do you know who's smoking?" ECF No. 58 at ¶ 54. On December 2, 2011, CO Beddick issued a citation to another inmate for smoking in his cell. <u>Id</u>. at ¶ 68. During that inmate's misconduct hearing, CO Beddick stated, "Thank Beale in three (1003) cell for the write-up, he's been complaining." <u>Id</u>.

These allegations fail to demonstrate that CO Beddick was deliberately indifferent to the presence of ETS smoke at SCI-Albion. To the contrary, they indicate that CO Beddick was

taking affirmative action to rectify the issue. Plaintiff's allegations are insufficient to state a

claim against CO Beddick.[3]

### b. COs Hodge, Jones, Ferraro and Maloney

Plaintiff alleges that on January 5, 2012, he was talking to another inmate, Williams,

when he smelled tobacco smoke that was so strong that it caused him to become "too weak" to

move. ECF No. 58 at ¶ 88. Williams attempted to get CO Hodge to help, but CO Hodge

"laughed" and refused. Id. Plaintiff states that he then became unconscious. Id.

On March 4, 2012, inmate Williams asked CO Jones if Plaintiff could help him program

his television. ECF No. 58 at ¶ 205. When CO Jones opened the door to Williams' cell, "visible

tobacco smoke poured out of the cell." Id. CO Jones laughed and said, "Oh, he's not going in

there, it smells like cigarette smoke." Id. Although Plaintiff claims to have immediately

suffered coughing, a headache, burning eyes, chest and side pains, nausea and hives, CO Jones

never said or did anything about Williams smoking in his cell. Id.

On May 7, 2012, Plaintiff was instructed by CO Ferraro that he would be moving into a

cell with a smoker, inmate Velazquez. Id. at ¶ 254. Plaintiff spoke with CO Maloney and CO

Ferraro and explained that he could not be housed with a smoker. Id. at ¶ 255. CO Maloney

called Unit Manager Wagner. Id. at ¶ 256. In front of CO Maloney, CO Ferraro, and Unit

Manager Wagner, Velazquez stated that he smoked "while on the toilet, after eating, and anytime

he felt the craving." Id. Plaintiff was nonetheless forced to move into Velazquez's cell and

---

[3] Plaintiff also implies that CO Beddick's actions were intended to force Plaintiff to become a "snitch," potentially exposing him to threats from other inmates. To the extent that Plaintiff may be attempting to state an Eighth Amendment claim based on this allegation, his claim fails. It is not unreasonable for a prison official who responds to an inmate's complaints about smoking to request that the inmate report violations of the non-smoking policy that he personally observes. See Mearin, 951 F.Supp.2d at 785-86 ("[I]n light of Plaintiffs' complaints that SCI Greene's zero tolerance smoking policy is not being complied with, Defendants' directives for Plaintiffs to report those who violate the policy to their block officers in order to facilitate the policy's enforcement, does not appear to be the equivalent of requiring Plaintiffs to be 'jail house informants.'").

given cleaning equipment to clean the tobacco smell out of the cell. Id. While doing so, he began coughing and experiencing other symptoms including a headache, burning eyes, chest and side pains, nausea and hives. Id. Several other inmates informed CO Maloney that Plaintiff could not be around a cell that smelled like tobacco smoke, but CO Maloney responded that, "It's almost count time, so I can't have too many people out." Id. at 258. According to Plaintiff, none of the Defendants took any steps to enforce the no-smoking policy with respect to inmate Velazquez. Id. at 256.

Each of these incidents, combined with Plaintiff's allegation that even brief exposures to tobacco smoke caused him to experience severe symptoms, demonstrates a deliberate indifference on the part of the Defendants with respect to Plaintiff's exposure to ETS. At this juncture, these allegations appear to be sufficient to state an Eighth Amendment claim with respect to Corrections Officers Hodge, Jones, Ferarro and Maloney.

### c. Superintendent Harlow

The majority of Plaintiff's interactions with Harlow occurred through his use of the prison grievance system. As noted above, mere participation in the grievance process "is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." Mearin, 951 F.Supp.2d at 782; Jefferson, 2006 WL 1947721, at *17.

However, Plaintiff also alleges that he spoke to Superintendent Harlow personally on multiple occasions concerning the smoking violations occurring at SCI-Albion and that Harlow ignored his concerns, despite being aware of Plaintiff's tobacco-related ailments. For example, on January 4, 2012, Plaintiff spoke with Harlow concerning problems with tobacco smoke and his tobacco allergies. ECF No. 58 at ¶ 86. Harlow responded that "we've been having meetings

to try to stop the smoking indoors." Id. Approximately one month later, Plaintiff again spoke to Harlow, informing him that he had recently passed out after coming into contact with cigarette smoke and expressing concern that the prison's no-smoking policy was not being followed. Id. at ¶ 158. Despite being informed of Plaintiff's concerns, Plaintiff alleges that Harlow took no action to encourage enforcement of the no-smoking policy. Id. at ¶ 114. On balance, these allegations, combined with Plaintiff's assertion that the levels of ETS at SCI-Albion were so pervasive that they caused him to suffer constantly from various ailments, suggest that Harlow was personally aware that Plaintiff was being exposed to unreasonable levels of ETS and failed to intervene or rectify the conditions. See Mearin, 951 F.Supp.2d at 784-85.

### d. Unit Manager Wagner

With respect to Wagner, one of the Unit Managers at SCI-Albion, Plaintiff alleges that he wrote to her on May 15, 2011, concerning his health situation and his allergies to tobacco smoke. ECF No. 58 at ¶ 29. Plaintiff also alleges that Wagner was aware of "many medical emergencies which occurred when [P]laintiff came in contact with tobacco smoke." Id. at ¶ 70. Despite this warning, Plaintiff contends that Wagner took no action when Plaintiff was reassigned to be housed with a smoker, inmate Velazquez, even after Wagner overheard Velazquez discussing his frequent smoking habit. Id. at ¶¶ 255-58. These facts are sufficient to permit the inference that Unit Manager Wagner acquiesced in allowing Plaintiff to be housed with a smoker despite being aware of Plaintiff's tobacco allergies.

### e. Maintenance Manager Murry

Plaintiff's only allegation against Murry, the Maintenance Manager at SCI-Albion, is that Plaintiff informed him on March 28, 2012, that he thought the ventilation in the cells was inadequate. ECF No. 58 at ¶ 235. Murry blamed the problem on inmates blocking their vents.

Id. at 236.  This lone accusation fails to establish an Eighth Amendment violation because, *inter alia*, Plaintiff does not allege that Murry was aware of his allergies to cigarette smoke.  See, e.g., Wilson, 423 F. App'x at 173 (liability hinges on the defendant being "aware of facts from which the inference could be drawn that a substantial risk of harm exists [and] draw[ing] the inference.") (quoting Farmer, 511 U.S. at 837).  Accordingly, Plaintiff's claim against Maintenance Manager Murry should be dismissed.

### f.  Health Care Administrator Overton

Plaintiff contends that he wrote to Overton, the Health Care Administrator at SCI-Albion, on November 5, 2011, concerning his ongoing medical problems stemming from tobacco smoke.  ECF No. 58 at ¶ 47.  Overton wrote back and suggested that Plaintiff contact the Unit Manager concerning enforcement of the no-smoking policy.  Id. at ¶ 137.  Later, in response to an unscheduled emergency medical visit, Overton again advised Plaintiff that he should "speak with [his] Unit Manager about the smoke on the housing unit."  Id. at ¶ 249.  None of these allegations state any sort of claim against Health Care Administrator Overton.

### g.  Summary

In light of the foregoing, the Court finds that Plaintiff has stated an Eighth Amendment claim against Superintendent Harlow, Corrections Officers Hodge, Jones, Ferraro and Maloney, and Unit Manager Wagner for unreasonable exposure to high levels of ETS.  However, Plaintiff's ETS-based claim against the remaining Defendants should be dismissed.

### 4.  Eighth Amendment – Inadequate Medical Care

Plaintiff next asserts, in a conclusory fashion, that the Corrections Defendants provided him with "inadequate medical treatment" in violation of the Eighth Amendment.  However,

Plaintiff has not provided any facts to support his assertion that the medical care provided to him while housed at SCI-Albion was substandard. Moreover, even if Plaintiff could factually support such an allegation, he still would fail to state a claim upon which relief could be granted against the Corrections Defendants. As courts have frequently noted, non-medical prison officials cannot be

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [ ... ] If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ... ] will not be chargeable with [ ... ] deliberate indifference [under the Eighth Amendment].

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer, 991 F.2d at 69. In other words, a non-medical supervisory official may be held only liable if there was "knowledge of malicious' and sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *1 (M.D.Pa), interpreting Spruill, 372 F.3d at 236-37. No such facts are alleged in the instant case.

### 5. First Amendment Retaliation

The next category of violations asserted by the Plaintiff all fall under the umbrella of First Amendment retaliation. In order to establish a claim for retaliation under the First Amendment, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there

is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

### a. Constitutionally Protected Conduct

Plaintiff alleges that he began to suffer retaliatory conduct in response to a grievance that he filed on August 31, 2011, concerning the excessive amounts of ETS at SCI-Albion and the prison's refusal to comply with the Clean Indoor Air Act. There is no question that "[t]he filing of grievances is constitutionally protected activity that satisfies the first prong of the prima facie case of retaliation." Marten v. Hunt, 2009 WL 1858257, at * 5 (W.D. Pa. June 29, 2009) (citing Robinson v. Taylor, 204 F. App'x 155, 157 (3d Cir. 2006)). Accordingly, Plaintiff has satisfied the first prong of his retaliation claim.

### b. Adverse Action

In response to his grievance, Plaintiff contends that various Corrections Defendants retaliated against him by destroying his personal property, including a television set, terminating him from his employment position, and confiscating his personal electronic devices. Specifically, Plaintiff alleges that on December 23, 2011, CO Sullivan and CO T. Lindsey searched his cell, confiscated several items, and broke his foot locker. ECF No. 58 at ¶ 71-72, 76. Shortly thereafter, Unit Manager Wagner informed Plaintiff that he would be terminated from his job in the prison commissary based on his possession of a pair of broken headphones obtained during the retaliatory search. Id. at ¶¶ 78-80. On February 17, 2012, CO Williamson and CO Pierce performed another invasive search of Plaintiff's cell that resulted in his television,

17

typewriter, antenna, and legal papers being improperly confiscated and numerous personal effects (including the television) being damaged or destroyed. Id. at ¶¶ 163-168.

There is no question that "[c]ell searches and the resulting confiscation of property (if motivated solely by retaliatory motive) satisfy the adverse action prong." Marten, 2009 WL 1858257, *7 (citing Medina v. City of Philadelphia, 2004 WL 1126007, at * 7 (E.D. Pa. May 19, 2004) ("Certainly, confiscation [of personal property] could deter a prisoner from exercising his constitutional right to petitioner the court to redress future grievances.")). Similarly, termination from a prison job "satisfies the 'adverse action' requirement . . . as it would be 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Kantamanto v. King, 651 F.Supp.2d 313, 326 (E.D. Pa. 2009) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). As such, Plaintiff has met his burden as to the second prong of his *prima facie* case.

### c. Causal Connection

Finally, Plaintiff must allege that there is a "causal connection between the exercise of the constitutional rights and the adverse actions." Marten, 2009 WL 1858257, *7. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (citing Rauser, 241 F.3d at 330)).

In the instant case, Plaintiff has established that he began filing grievances concerning ETS on August 31, 2011, and that he continued to petition prison staff at SCI-Albion to enforce the no-smoking policy and sanction inmates caught smoking throughout his time at the prison. Each of the alleged retaliatory incidents took place shortly thereafter, and, according to Plaintiff, many of the incidents occurred under circumstances from which it could be inferred that he was

singled out for such conduct.  See ECF No. 58 at ¶¶ 71-73, 78-80, 163-68.  At this preliminary juncture in this litigation, these allegations are sufficient to suggest a causal connection between Plaintiff's protected activity and the alleged retaliation.

### d.  Summary

Based on the foregoing, the Court concludes that Plaintiff has stated a claim for First Amendment retaliation against CO Sullivan, CO T. Lindsey, CO Williamson, CO Pierce, and Unit Manager Wagner.

### 6.  Failure to Train

Finally, Plaintiff contends that several of the Corrections Defendants "fail[ed] to supervise and properly train subordinates, in violation of the First and Eighth Amendments to the United States Constitution."  ECF No. 58 at ¶ 285.  However, the Third Circuit has consistently held that, "while supervising officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  Chinchello v. Fenton, 805 F.3d 126, 133 (3d Cir. 1986). Thus, "a supervisor's mere failure to train, supervise or discipline subordinates does not state a basis for a § 1983 claim against the supervisor absent proof of direct participation by the superior in some unlawful act."  Zabresky v. Von Schmeling, 2013 WL 315718, at *7 (M.D. Pa. Jan. 28, 2013) (citing Williams v. Bickell, 2012 WL 5379185, at *5 (M.D. Pa. Oct. 31, 2012)).  Moreover, the plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Blacknall v. Citarella, 168 F. App'x 489, 492 (3d Cir. 2006) (quoting Reitz v. County of Bucks,

125 F.3d 139, 145 (3d Cir. 1997)). Plaintiff's conclusory allegations that the Corrections Defendants with supervisory authority failed to adequately train the staff at SCI-Albion fail to meet this standard and should be dismissed.

## III.    CONCLUSION

For the reasons stated herein, it is respectfully recommended that the motion to dismiss by the Commonwealth Defendants (ECF No. 67) be granted in part and denied in part, as follows:

It is recommended that all claims against all Defendants in their official capacities be dismissed on the basis of the immunity from such suits afforded by the Eleventh Amendment. It is further recommended that all claims against Defendants Bryant, Blood, Christopher, Irwin, Knight, Lindey, McDonald, McLaurin, Pangborn, Rodriguez, Woods, Campbell, Giles, Hendricks, D. Lindsey, Silloway, Szelewski, Weaver, Ceremuga, Cimperman, Hong, Henry, Petroff, Smith, Lewis, Wetzel, Witherite, Hall, Gilmore, Johnson, Flinchbaugh, Beddick, Murry and Overton be dismissed in light of Plaintiff's failure to allege that they were personally involved in any misconduct. Finally, it is recommended that Plaintiff's allegations of inadequate medical treatment and failure to supervise be dismissed for failure to state a claim.

It is recommended that Defendants' motion to dismiss be denied as to Plaintiff's Eighth Amendment claim based on exposure to ETS with respect to Defendants Harlow, Hodge, Jones, Ferraro, Maloney, and Wagner. It is further recommended that Defendants' motion to dismiss be denied as to Plaintiff's First Amendment retaliation claim with respect to Defendants Sullivan, T. Lindsey, Williamson, Pierce, and Wagner.

The Clerk of Courts should be directed to terminate the following Defendants from the docket: Bryant, Blood, Christopher, Irwin, Knight, Lindey, McDonald, McLaurin, Pangborn, Rodriguez, Woods, Campbell, Giles, Hendricks, D. Lindsey, Silloway, Szelewski, Weaver, Ceremuga, Cimperman, Hong, Henry, Petroff, Smith, Lewis, Wetzel, Witherite, Hall, Gilmore, Johnson, Flinchbaugh, Beddick, Murry, Telega and Overton.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).



/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 12, 2015